IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN QUINTERO,                 ) | No. CV-F-04-5791 OWW |
|                           ) | (No. CR-F-02-5379 OWW) |
|                           ) | |
|                       ) | MEMORANDUM DECISION AND |
|           Petitioner,     ) | ORDER DENYING PETITIONER'S |
|                       ) | MOTION TO VACATE, SET ASIDE |
|       vs.                   ) | OR CORRECT SENTENCE PURSUANT |
|                       ) | TO 28 U.S.C. § 2255 AND |
|                       ) | DIRECTING CLERK OF COURT TO |
| UNITED STATES OF AMERICA,     ) | ENTER JUDGMENT FOR |
|                       ) | RESPONDENT |
|                       ) | |
|           Respondent.     ) | |
|                       ) | |
| _____ ) | |

On June 20, 2004, Petitioner Ruben Quintero timely filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.

Petitioner was charged by Superseding Indictment with use of a communication facility in connection with a drug offense in violation of 21 U.S.C. § 843(b). Petitioner pleaded guilty pursuant to a written Plea Agreement. The Plea Agreement specifically stated:

> The defendant has read the charges against

1

him contained in the Indictment and the Superseding Information in this case, and the charges have been fully explained to him by his attorney.  Further, the defendant fully understands the nature and elements of the crimes with which he has been charged, together with the possible defenses thereto, and has discussed them with his attorney.

...

3.  <u>Agreements by the Defendant</u>.

...

(g)  Defendant, Ruben Quintero, hereby acknowledges the benefits he has received pursuant to the plea disposition set forth in this memorandum and his guilt of the offenses [sic] to which he is pleading guilty. Defendant hereby waives all rights to contest the means by which his plea of guilty will be entered before the District Court.  This waiver includes, but is not limited to, any claim, whether in District Court or in appellate proceedings and on direct appeal or subsequently, that the dictates of Federal Rule of Criminal Procedure 11, or any successor Rules, legislation or case authority, were not followed in the entry of defendant Quintero's guilty plea.  The defendant is also aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, the defendant knowingly waives the right to appeal, on any ground whatsoever, any sentence so long as the initial term of imprisonment is four (4) years or less.  The defendant also waives his right to challenge his conviction, sentence or the manner in which his sentence was determined in any collateral attack, including but not limited to a motion brought under Title 28, United States Code, Sections 2255 or 2241.

...

4.  <u>Joint Agreements By The Parties</u>.

(a)  The defendant and the government agree

2

and stipulate that the amount of controlled substances involved in the defendant's offense is approximately 3024 grams of a mixture or substance containing cocaine base/crack.  The mixture or substance containing cocaine base/crack was 53% pure resulting in 1602 grams of pure cocaine base/crack.

...

6.   Factual Basis.

The defendant will plead guilty because he is in fact guilty of the crime set forth in the Superseding Information.  The defendant also agrees that his guilty plea will be based upon the following facts, although he acknowledges that, as to other facts, the parties may disagree:

> Between approximately September 18, 2002 and September 30, 2002, in Fresno County, State and Eastern District of California, defendant Ruben Quintero was a member of a conspiracy to distribute, and possess with intent to distribute, cocaine base/crack.  On or about September 30, 2002, defendant Ruben Quintero Roman [sic] engaged in several telephone conversations with his brother Manuel Quintero. Those telephone conversations concerned arrangements for Ruben Quintero and Dalia Roman (Manuel Quintero's girlfriend) to watch out for law enforcement while Manuel Quintero sold cocaine base/crack to someone.  On September 30, 2002, Dalia Roman and Ruben Quintero traveled to the apartment complex at 3207 West Shields Avenue, Fresno California in order to watch out for law enforcement while Manuel Quintero negotiated the sale of cocaine base/crack.  At all relevant times, defendant Ruben Quintero and his co-conspirators knew that cocaine base/crack is a controlled substance.

3

1    Petitioner was sentenced to 48 months incarceration and a 12

2    month term of supervised release.  Petitioner did not file an

3    appeal.

4    Petitioner raises a number of grounds for relief:

5    **I.  Whether counsel was ineffective upon lack
     of objection to the District Court <u>Non-</u>**

6    **<u>Discretionary</u> Nature of Imposition of
     Supervise [sic] Release under Apprendi v. New**

7    **Jersey?;**

8    **II.  Whether counsel was ineffective upon
     allowing a plead guilty [sic] without**

9    **information of the 'voluntary; freely and
     intelligent elements' where the <u>absence</u> of**

10   **assurances of the first 'core concerns of be
     free of coercion and promises are lacking?;**

11

12   **III.  Whether counsel was ineffective at
     sentencing hearing upon lack arguments**

13   **regarding: (a) entranpment [sic] and
     manipulation sentence, (b) his client**

14   **foreseeability of '2 kilos of cocaine', (c)
     his client was less culpable and entitled to**

15   **four level downward departure upon minimal
     role, (d) did no [sic] call for sentencing**

16   **hearing the codefendants' [sic] Manuel and
     Dalia to support the minimal role and does**

17   **not contact nor call the movant families
     (mother and sister) to entice the minimal
     role under the facts of the case?;**

18

19   **IV.  Whether miscarriage of justice is an
     exception to the enforcement of waivers?;**

20   **V.  Whether counsel was ineffective upon lack
     of information to his client regarding the**

21   **'law' as applied to the facts of the present
     case which did tainted [sic] the plead guilty**

22   **as unknowingly, unvoluntary [sic] and
     unintelligently taken?;**

23

24   **VI.  Whether counsel was ineffective upon
     movant plead guilty was the product of (a)**

25   **coercion, (b) 'unlawfull out-of-court package
     deal bargain based in [sic] his codefendant's**

26   **Manuel Quintero cooperation/agreement, (c)
     out-of-court counsels and drug enforcement**

4

agents 'secretive' package deal agreement?;

VII.  Whether the District Court committed plain error and abuse it [sic] judicial function in accepting as factual basis of guilty plea 'mere association and communication with the perpetrator of the criminal activity?;

VIII.  Whether counsel failure to minimum affording an Alford plea and/or calling for pretrial hearing before the recommendation of guilty plea was entered?

In support of his motion, Petitioner submits the following declaration:

2. - I was never aware of any conversations regarding drug deals from Manuel Quintero and an [sic] confidential informant.  I was never present when both discussed a three kilogram cocaine purchase and I was not in any countersurveillance, since I was not present at such meetings.

3. - During the arrest day on September 20, 2002, I was asked from Dalia's my sister in law to pursue a ride to the Manuel apartment. I was visiting my mom like every-day after work.  When I arrived to the apartment with Dalia's, Manuel came to the car and instructed me to leave the area and I did so, I was think that because Manuel was to his apartment some trouble was present between him and Dalia in their relationship.

4. - I plead guilty to the offense based on my lawyer recommendation that because I had answered a phone call in the arrest day I was guilty of conspiracy, I had no prior conversations nor had understand the law nor the facts of the case, counsel at no moment had explained me anything regarding the case. It was my understanding from the beginning that I would be release based in agreement between the counsels and the government for Manuel cooperation, later counsel informing that only boot camp would be permitted due to no enoughly Manuel cooperation and when sentence was schedule counsel had informed

5

that I would be sentence to camp or probatory
and after sentence had said that I was
allowed to have one year reduction mandatory.

5. - During all times, trial counsel had
informed that the case was enterily depending
of what Manuel was to do to handle his own
case, because Manuel guilty was also me
guilt. Nonbody informed me that I would not
be culpable for association or family
relationship alone.

6. - Counsel treathening and coerce me to
plead guilty because according to counsel the
government was so powerfull that no way to
win the case was possible. I had no prior
convictions nor association with anything
regarding dope-deal, the attorney had
informed that the government was discussing
with him that I was involved on dope-deal in
the past years, I had very clear informed to
the counsel that it was untrue and that at no
moment I was involved in anything regarding
dope.

Based upon the foregoing motion of & 2255, I
believe that there is presented an
ineffective assistance counsel, had I
knowingly that the law was regarding the
present case I would with fiar and just
reason asserted my trial right at any cost.
[SIC]

Petitioner also submits a declaration by Manuel Quintero:

2.    This declaration/affidavit is made to
support a Motion under & 2255 of Ruben
Quintero who also was charged with possession
and intent to distribute cocaine base/crack
and conspiracy to distribute cocaine
base/crack, in violation of 21 U.S.C. & 841,
I learned through my personal participation
in the outcome of the case that Ruben's was
later charged with superseding information
under communication to permit the narcotic
transaction under 21 U.S.C. & 843(b) and by
consultation with my trial attorney.

3.   I had no negotiated the transaction
described from Agent's Campbel affidavit on
or About August 25, 1999 wherein appear I had

6

sold to detective Epifanio Cardenas one ounce
of cocaine while him was working in an
undercover capacity.  Such affirmation was a
perjuris and had only looking the objective
of 'bolstering' the case to allowed the
communication with the confidential informant
Michael's.  I had know the confidential
informant as Michael or simply Mike, but at
no moment with or without Michael had I sold
any cocaine to any undercover agent's as
appear in the D.E.A. Special agent affidavit.
I had not knowledge of such factor, nor had
my lawyer discussed with mine in fully the
truth of such transaction, would I be allowed
a face to face discussion with the named
Epifanio Cardenas him would no point such
factor as different to perjury and if allowed
or believed from the prosecution it would be
against the laws of the nature to think I had
been do so.  I personally when had been sold
any dope had a personal knowledge of any
customer.

4.  I had discussed on September 19, 2002
with Michael (C.I.) the selling of three
powder kilograms of cocaine.  Before this
meeting years before when I had selling any
dope to Mike, it was powder and Mike in my
presence had been cooking into crack you own
dope based in the factor that I was never
interested in selling or be involved in the
crack cocaine transactions/business.  I had
personal knowledge that Mike had always
transformed any powder cocaine into crack in
order to selling to Mike distributors.

5.  After I came to prison, I learned that
Mike had been arrested for crack cocaine
transactions and today I understand that it
was the main factor which let him intent
involvement with mine in the
crack/enterprises.  I had not knowledge nor
was discovered from my lawyer's that Mike was
incorporating with law enforcement agencies
in order to hope a favorable treatment with
regard to his own drug trafficking offense.

6.  I am responsible for what happen on
September 30, 2002, when I was arrested and
charged in the offense I did made an
agreement which is fair called out-of-court

7

agreement with my lawyer, my lawyer promised
me that if I plead guilty and cooperated with
the government my brother and codefendant's
Manuel would be release of the offense, I had
explained to both my lawyer and the
government agents that my brother had nothing
to do with the transaction or offense and
that my brother had no the <u>minimum</u> knowledge
of what I was and had been done on the arrest
day.

7.  When I plead guilty to the offense, my
lawyer told me, that pressure in my brother
was necessary in order to I obtain lenient
sentence and that if my cooperation was not
enough, my brother should be sentenced to
both camp or probation.  There was an out of
court agreement between my lawyer, the
government and myself to plead guilty and
enticing my brother to do the same in
exchange of lenitent sentence based on my
cooperation and release or boot camp to my
probation or alternatively probation
sentence.

8.  I had not called to Ruben, my intention
was always call to my law common wife's
Dalia, but she had asked Ruben to be brought
through a ride in the Ruben's car, since she
had no car available.

9.  I had no knowledge that the law of the
United States doesn't permitted guilty for
association or guilty for familirelationship,
it was no explained to myself from trial
counsel.

10.  Had Ruben asserted jury trial I was abel
to offer the same testimony included in the
present declaration, which is based in the
truth, I had no knowledge that the government
intention was to sentencing Ruben to
incarceration time, since both my lawyer and
the own government during metings had
enoughly explained that as product of my
cooperation Ruben and Dalia would be release
of the offense.  I did offer my cooperation
and still am able to cooperate but also I
must states before this court that Ruben had
nothing to do with my offense and if I would
understant that my lawyer and government had

8

misleading the factor tha Ruben would be
incarcerated, I would at no moment pressure
Ruben to plead guilty.

Petitioner also submits the declaration of his sister, Alma L.

Quintero:

Ruben had the habit of coming to my mother's
house in the afternoons after work.  On the
day of his arrest, it was no different.  He
came home to 2469 South Laureen.  On the same
day, my sister in law, Dalia Roman was also
at my mother's housse.  Since she had no car
to drive herself home, she asked my brother,
Ruben, to give her a ride to her apartment
located on Shields Avenue and Valentine
Avenue.  Being Ruben's sister I know him well
and can attest on his behalf that he was not
involved in any type of illegal activity nor
is he a delinquent.  We have a good
relationship and trust each other.
Therefore, if there were anything wrong then
he would have told me.  During the trial and
court proceedings I was not call [sic] upon
to present my testimony nor was I given the
opportunity to speak with his counsel.  I
firmly believe the justice system can give my
son [sic] Ruben Quintero equity, as he did
not recive a fair trial.

Petitioner also submits the declaration of his mother, Maria

Quintero, which is in all respects identical to that of Alma

Quintero.

A.   Effect of Waiver in Plea Agreement.

A defendant may waive the statutory right to bring a Section

2255 motion challenging the conviction or sentence.  *United*

*States v. Pruitt*, 32 F.3d 431, 433 (9th Cir.1994); *United States*

*v. Abarca*, 985 F.2d 1012, 1014 (9th Cir.1992), *cert. denied*, 508

U.S. 979 (1993).  The Ninth Circuit ruled that "a plea agreement

that waives the right to file a federal habeas petition pursuant

9

1  to 28 U.S.C. § 2254 is unenforceable with respect to an IAC claim

2  that challenges the voluntariness of the waiver." *Washington v.*

3  *Lampert*, 422 F.3d 864, 871 (9th Cir.2005), *cert. denied*, 547 U.S.

4  1074 (2006).  Petitioner makes no claim in his Section 2255

5  motion that he was denied the effective assistance of counsel or

6  that the waiver of his right to collaterally attack his

7  conviction and sentence was not knowing and voluntary because of

8  ineffective assistance of counsel.  Consequently, Petitioner

9  cannot challenge his conviction or sentence pursuant to Section

10  2255.

11      B.  Ineffective Assistance of Counsel.

12      The Court assumes, arguendo, that Petitioner's waiver does

13  not preclude his claims of ineffective assistance of counsel.

14          1.  Governing Standards.

15      To establish an ineffective assistance of counsel claim,

16  Petitioner must show: (1) the representation was deficient,

17  falling "below an objective standard of reasonableness"; and (2)

18  the deficient performance prejudiced the defense.  *Strickland v.*

19  *Washington*, 466 U.S. 668, 687 (1984).  The Court need not

20  evaluate both prongs of the *Strickland* test if the petitioner

21  fails to establish one or the other.  *Strickland*, *id.* at 697;

22  *Thomas v. Borg*, 159 F.3d 1147, 1152 (9th Cir.1998), *cert. denied*,

23  526 U.S. 1055 (1999).

24      Under the first prong, Petitioner must show that "counsel

25  made errors so serious that counsel was not functioning as the

26  'counsel' guaranteed the defendant by the Sixth Amendment."

10

*Strickland*, 466 U.S. at 687.  "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Id.* at 690.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct of counsel's performance at the time."  *Id.* at 689.  The proper inquiry is whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  *Id.*  The court must apply "a heavy measure of deference to counsel's judgments," and "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance."  *Id.* at 690-691.  "The relevant inquiry under *Strickland* is not what defense counsel could have pursued, but rather whether the choices made by defense counsel were reasonable."  *Siripongs v. Calderon*, 133 F.3d 732, 736 (9th Cir.1988).  "The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel."  *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir.1989).  A decision to waive an issue where there is little or no likelihood of success and concentrate on other issues is indicative of competence, not ineffectiveness.  *See Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir.1989).

To meet the prejudice requirement, the petitioner must

1  demonstrate that errors "actually had an adverse effect on the

2  defense." *Strickland*, 466 U.S. at 693. "It is [also] not enough

3  for the defendant to show that the errors had some conceivable

4  effect on the outcome of the proceeding." *Id.* "Virtually every

5  act or omission of counsel would meet that test, and not every

6  error that conceivably could have influenced the outcome

7  undermines the reliability of the result of the proceeding." *Id.*

8  "The defendant must show that there is a reasonable probability

9  that, but for counsel's unprofessional errors, the result of the

10 proceeding would have been different. A reasonable probability

11 is a probability sufficient to undermine confidence in the

12 outcome. *Id.* at 694. Where a petitioner enters a guilty plea

13 upon the advice of counsel, the voluntariness of the plea depends

14 upon whether the petitioner received effective assistance of

15 counsel. In order to prevail on an ineffective assistance of

16 counsel claim, "the [petitioner] must show that there is a

17 reasonable probability that, but for counsel's errors, he would

18 not have pleaded guilty and would have insisted on going to

19 trial." *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985).

20       2. <u>Failure of Counsel to Advise Petitioner of What the</u>

21 <u>"Element Voluntary" or the "Element Freely and Intelligently"</u>

22 <u>Meant Before Entry of Guilty Plea</u>.

23     Petitioner claims that he was denied the effective

24 assistance of counsel because of counsel's failure to advise

25 Petitioner that his guilty plea must be voluntary, knowing and

26 intelligent. Petitioner asserts that he was "coerced and forced

from his counsel to enter the plead of guilty, nothing in the agreement indicates the appellant's guilty or signature would not be the result of 'force or coercion or assurance or promises. [sic].'" Petitioner asserts that his "main motive to plea of guilty was the product of his lawyer coercion and promises that petitioner's would be sentenced to probation and faces not jail incarceration."

Petitioner's claims are belied by the terms of the Plea Agreement and the Rule 11 colloquy conducted during the change of plea proceedings. The Plea Agreement specifically stated:

> 2. **Nature, Elements and Possible Defenses**.
>
> The defendant has read the charges against him contained in the Indictment and the Superseding Information in this case, and the charges have been fully explained to him by his attorney. Further, the defendant fully understands the nature and elements of the crimes with which he has been charged, together with the possible defenses thereto, and has discussed them with his attorney.
>
> ...
>
> 10. **Entire Agreement**.
>
> The defendant and his attorney acknowledge that no threats, promises or representations have been made, nor agreement reached, other than those set forth in this agreement and the memorandum to induce defendant to plead guilty.

During the Rule 11 colloquy, Petitioner stated under oath that he had completed a high school education, that he had never been treated for a mental illness or for addiction to narcotic drugs, and that he had not consumed any medicine, drug or alcohol on the

13

1  day of sentencing.  Petitioner stated under oath that he had read

2  the Plea Agreement, that he had discussed it with Mr. Harralson

3  and asked Mr. Harralson questions about the Plea Agreement before

4  signing it, and that he understood the Plea Agreement before

5  signing it.  Petitioner stated under oath he had been able to

6  discuss the charge in the Superseding Information and how it

7  would be defended at trial with Mr. Harralson and that Petitioner

8  was completely satisfied with the legal advise, counsel and

9  representation Mr. Harralson had provided.  During the change of

10  plea proceedings, the Court orally reviewed in open court every

11  provision of the Plea Agreement with Petitioner and asked

12  Petitioner if he agreed.  In every instance, Petitioner stated

13  that he did.  After reviewing with Petitioner every provision of

14  the Plea Agreement pertaining to agreements by Petitioner and

15  agreements by Respondent, the following occurred:

16              Q.  I have gone through what I understand in
                this writing to be the entire agreement as to
17              what you are supposed to give and get in
                return.  Do you have any different
18              understanding?  Has anybody promised you
                anything that I have not just gone over?
19
                A.  No.
20
                Q.  Has anybody threatened you or put
21              pressure on you to get you to change your
                plea?
22
                A.  No.
23
24  The Court then reviewed with Petitioner the maximum punishment

25  for the crime, including that the maximum term of supervised

26  release was one year.  Petitioner stated that he understood the

maximum sentence that could be imposed.  The Court reviewed with

Petitioner the elements of the offense that must be proved before

Petitioner could be convicted.  Petitioner stated that he

understood the elements.  The Court then reviewed with Petitioner

the factual basis for the guilty plea set forth in the Plea

Agreement and asked Petitioner if those facts were true, to which

Petitioner responded "yes."  After reviewing with Petitioner each

of the constitutional and statutory rights Petitioner was giving

up by not having a jury trial, asking Petitioner if he understood

each of those rights and was willing to give them up, to each of

which Petitioner responded affirmatively, the Court asked

Petitioner how he pleaded to the Superseding Information.  After

Petitioner pleaded guilty, the Court found:

> It is the finding of the Court in the case
> United States versus Ruben Quintero that the
> defendant is fully capable of entering an
> informed plea.  His plea of guilty is knowing
> and voluntary.  It is supported by
> independent facts that establish eash
> essential element of the offense.

Petitioner's contention that defense counsel was ineffective

because he did not explain to Petitioner that his guilty plea

must be voluntary, knowing and intelligent before the Court would

accept it is irrelevant given the detailed and specific Rule 11

colloquy described above.  The Court determined based on

Petitioner's responses under oath that Petitioner voluntarily,

knowingly and intelligently entered into the Plea Agreement.

Petitioner's motion on this ground is DENIED.

15

1          3.   <u>Ineffective Assistance of Counsel Regarding Law and</u>

2 <u>Facts of Case</u>.

3     Petitioner contends that he was denied the effective

4 assistance of counsel because counsel failed to explain to

5 Petitioner prior to the entry of the guilty plea the following:

6          1).  Petitioner was not informed at all of
           the sentence entranpment;
7
           2).  Petitioner's was not informed at all
8          from his counsel of the sentencing
           manipulation as trial defense;
9
           3).  Petitioner's was no informed that he
10         wasn't entitled to be found guilty based in
           '<u>family relationship as evidences substantive</u>
11         <u>of guilty</u>';

12         4).  Petitioner's was not informed that he
           was not entitled to be found guilty whether
13         the government had used 'evidence of
           association' as substantive of guilty. [SIC]
14
15     Petitioner's claims of ineffective assistance of counsel are

16 belied by the Rule 11 colloquy discussed above.  Petitioner

17 admitted under oath that he had discussed the charge against him

18 and how it would be defended with defense counsel prior to

19 signing the Plea Agreement and that he understood the Plea

20 Agreement.  Petitioner admitted under oath that he had read that

21 aspect of the Plea Agreement setting forth the elements that must

22 be proved by the United States beyond a reasonable doubt.  During

23 the Rule 11 colloquy the Court read those elements to Petitioner

24 and Petitioner stated that he understood those elements,

25 including the element that Petitioner became a member of the

26 conspiracy knowing at least one of its purposes and intending to

help accomplish it.  The sentence was based on a superseding
information under which Petitioner pleaded to a phone count
carrying a maximum sentence of 48 months.

Petitioner's contention that counsel was ineffective for
failing to advise Petitioner that "sentencing entrapment" or
"sentencing manipulation" are trial defenses is without merit.
"Sentencing entrapment or 'sentence factor manipulation' occurs
when 'a defendant, although predisposed to commit a minor or
lesser offense, is entrapped into committing a greater offense
subject to greater punishment.'" *United States v. Staufer*, 38
F.3d 1103, 1106 (9th Cir.1994).  "'[S]entencing entrapment may be
legally relied upon to depart under the Sentencing Guidelines
....'" *Id.* at 1108.  Consequently, counsel was not ineffective by
failing to advise Petitioner that sentencing entrapment is a
defense to the crime of conviction.[1]

Petitioner contends that counsel was ineffective because he
failed to conduct pretrial investigation of the confidential
informant to discover his criminal history or to move for
severance of his trial from that of his co-defendants to avoid
any spill-over effect.

Petitioner's claim of ineffective assistance because of the
failure to move for severance fails on the prejudice prong.  A
motion for severance is rarely granted in a conspiracy case

---

[1]Further, Petitioner makes no showing from which it may be
inferred that he would not have pleaded guilty and gone to trial
based on the alleged sentencing entrapment or that he was even
subjected to sentencing entrapment.  The opposite is true.

because any possibility of prejudice resulting from the spill-over effect of evidence is negated by the use of limiting instructions.

Petitioner's claim of ineffective assistance because of counsel's failure to seek discovery of the criminal history of the confidential informant is without merit. Rule 16(a)(2), Federal Rules of Criminal Procedure, states that, except as provided in Rule 16(a)(1)

> this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government or any other government agent investigating or prosecuting the case. Nor does the rule authorize the discovery or inspection of statements made by government witnesses or prospective government witnesses except as provided in 18 U.S.C. § 3500.

Section 3500(a) provides:

> In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

This court lacks the authority to order pretrial discovery of Jencks Act material over the government's objection. *United States v. Mills*, 641 F.2d 785,790 (9th Cir.), *cert. denied*, 454 U.S. 902 (1981). Furthermore, as held in *United States v. Jones*, 612 F.2d 453, 455 (9th Cir. 1979), *cert. denied*, 445 U.S. 966 (1980):

> <u>Brady</u> does not overcome the strictures of the

18

> Jencks Act.  When the defense seeks evidence
> which qualifies as both Jencks Act and <u>Brady</u>
> material, the Jencks Act standards control.

Finally, the Supreme Court has held that "[t]here is no general

constitutional right to discovery in a criminal case, and <u>Brady</u>

did not create one ...."  *Weatherford v. Bursey*, 429 U.S. 545,

559 (1977).

Petitioner claims ineffective assistance of counsel because

counsel informed Petitioner that "'because Manuel <u>conspired</u> with

the confidential informant' the agreement requisite to conspiracy

did exist."  Petitioner asserts:

> Counsel information that Manuel had <u>conspired</u>
> with the informant was fatal to the plea of
> guilty obtention [sic], Manuel as matter of
> law wouldn't conspired with an [sic]
> 'government agent or informant.'  Counsel at
> no moment nor the court itself had informed
> the movant's [sic] that the conspiracy had to
> be proved between 'Manuel, Dalia and perhaps
> the petitioner,' had the petitioner's know
> [sic] that that [sic] the conspiracy would
> not as a matter of law to be proved between
> Manuel and the informant, with fair reason
> this movant's would have asserted his trial
> right and reject the government's and counsel
> [sic] plead of guilty.

Petitioner's contention is belied by the factual basis for

Petitioner's guilty plea in the written Plea Agreement and in the

Rule 11 colloquy in which Petitioner admitted under oath to those

facts.  The factual basis of Petitioner's guilty plea clearly

describes Petitioner's co-conspirators as Manuel Quintero and

Dalia Roman.  Manuel Quintero, who pleaded guilty on the same day

as Petitioner, pleaded guilty to the following facts in his

written Plea Agreement and during his Rule 11 colloquy:

> Between approximately September 18, 2002 and
> September 30, 2002, in Fresno County, State
> and Eastern District of California, defendant
> Manuel Quintero was a member of a conspiracy
> to distribute, cocaine base/crack.  As part
> of this conspiracy, on or about September 30,
> 2002, defendant Manuel Quintero approximately
> three kilograms of cocaine base/crack which
> he intended to sell to another person.  On or
> about September 30, 2002, defendant Manuel
> Quintero engaged in several telephone
> conversations with his girlfriend Dalia
> Roman.  Those telephone conversations
> concerned arrangements for Dalia Roman and
> Ruben Quintero (Manuel Quintero's brother) to
> watch out for law enforcement while Manuel
> Quintero sold cocaine base/crack to someone.
> On September 30, 2002, Dalia Roman and Ruben
> Quintero traveled to the apartment complex at
> 3207 West Shields Avenue, Fresno, California
> in order to to [sic] watch out for law
> enforcement while Manuel Quintero negotiated
> the sale of cocaine base/crack.  At all
> relevant times, defendant Manuel Quintero and
> his co-conspirators knew that cocaine
> base/crack was a controlled substance.

Dalia Roman, who also pleaded guilty on the same day as her co-defendants, pleaded guilty to the following facts in her written Plea Agreement and during her Rule 11 colloquy:

> Between approximately September 18, 2002 and
> September 30, 2002, in Fresno County, State
> and Eastern District of California, defendant
> Dalia Roman was a member of a conspiracy to
> distribute, and possess with intent to
> distribute, cocaine base/crack.  On or about
> September 30, 2002, defendant Dalia Roman
> engaged in several telephone conversations
> with her boyfriend Manuel Quintero.  Those
> telephone conversations concerned
> arrangements for Dalia Roman and Ruben
> Quintero (Manuel Quintero's brother) to watch
> out for law enforcement while Manuel Quintero
> sold cocaine base/crack to someone.  On
> September 30, 2002, Dalia Roman and Ruben
> Quintero traveled to the apartment complex at
> 3207 West Shields Avenue, Fresno, California
> to to [sic] watch out for law enforcement

1                              **while Manuel Quintero negotiated the sale of**
                              **cocaine base/crack.  At all relevant times,**

2                              **defendant Dalia Roman and her co-conspirators**
                              **knew that cocaine base/crack was a controlled**

3                              **substance.**

4       **These statements, all made under oath during the Rule 11**

5 **colloquies negate any claim of ineffective assistance of counsel**

6 **based on counsel's alleged statement to Petitioner that Manuel**

7 **Quintero had conspired with the confidential informant and that**

8 **counsel was ineffective in failing to investigate Petitioner's**

9 **involvement in the conspiracy.**

10       **Petitioner contends that counsel was ineffective by failing**

11 **to discover or contend that "Agent's Cambel [sic] created false**

12 **evidence that on or about August 25, 1999, Fresno Police**

13 **Detective Epifanio Cardenas working in an undercover capacity**

14 **purchased one ounce of cocaine from Manuel Quintero."**

15       **Petitioner's assertion is based on Manuel Quintero's**

16 **declaration filed in support of Petitioner's Section 2255 motion.**

17 **Even if Manual Quintero's averment is correct, evidence or lack**

18 **thereof of Manuel Quintero's past drug trafficking had no**

19 **relevance to Petitioner's guilt or innocence in the criminal**

20 **prosecution.  Petitioner has not demonstrated prejudice as a**

21 **result of defense counsel's alleged failure to investigate Manuel**

22 **Quintero's claim.**

23       **Petitioner claims that counsel was ineffective because**

24 **"[c]ounsel informed his client that if guilty of conspiracy from**

25 **trial jurors automatically also should be guilty of possession**

26 **was crucial to the plea of guilty obtention [sic]."**

1  Specifically, Petitioner claims that counsel did not advise him

2  of the law in *Pinkerton v. United States*, 328 U.S. 640 (1946).

3     In *Pinkerton*, the Supreme Court held that a party to an

4  unlawful conspiracy may be liable for the substantive offense

5  committed by a co-conspirator in furtherance of the conspiracy.

6  A defendant may be convicted under a *Pinkerton* theory for a

7  charged violation if the government proves: (1) the substantive

8  offense was committed in furtherance of the conspiracy; (2) the

9  offense fell within the scope of the conspiracy; or (3) the

10  offense could reasonably have been foreseen as a necessary of

11  natural consequence of the conspiracy. *See United States v.*

12  *Fonseca-Caro,* 114 F.3d 906, 908 (9th Cir.1997); *United States v.*

13  *Lopez*, 100 F.3d 98, 101 (9th Cir.1996).

14     Relying on *Pinkerton*, Petitioner asserts: "[C]ontrary [sic]

15  what counsel had explained and informed regarding the law under

16  Pinkerton to be deemed guilty of the substantive counts of

17  possession committed by Manuel, the jury had to be instructed

18  under Pinkerton and that proof of a conspiracy <u>alone</u> would not

19  sustain the possession charge."

20     Petitioner has not demonstrated ineffective assistance of

21  counsel based on this claim because he has not demonstrated

22  prejudice.  Petitioner admitted the substantive offense to which

23  he pleaded guilty.  Whether or not *Pinkerton* conspiracy

24  instructions would have been appropriate if Petitioner and his

25  co-defendants had gone to trial is speculative.  There is no

26  present showing what evidence would have been presented at trial.

1   Moreover, a *Pinkerton* instruction is pro-prosecution as it

2   emphasizes the vicarious liability of conspiracy.

3       Petitioner contends that counsel was ineffective for

4   allegedly failing to inform Petitioner of the use of a

5   "deliberate ignorance" instruction. Petitioner asserts:

6           Counsel had been explained [sic] that because
            the petitioner's may be had 'close the eyes'
7           when the offense was committed, it was
            sufficient to sustain a conviction, but
8           counsel did not informed [sic] that regarding
            such facts the movant's [sic] was still
9           entitled to deliberate ignorance instruction
            because petitioner's [sic] denied actual
10          knowledge that the red cooler was improperly
            containing dope, the movant's [sic] did not
11          know the essential facts that constituted
            crime nor had the knew [sic] his conduct for
12          driving a car in order to get Dalia's
            appearance to the scene of the crime was in
13          violation of the law, the case as presented
            from the prosecution solely would present
14          evidence that the petitioner's [sic] 'perhaps
            deliberately avoided knowledge' and perhaps
15          the petitioner's purposely contrived to avoid
            learning the truth. The trial record would
16          support that petitioner's [sic] was aware of
            a high probability that his understanding of
17          the crime was erroneous and consciously
            avoided obtaining actual knowledge of his
18          actions.

19      Petitioner's claim of ineffective assistance of counsel is

20  without merit. "Deliberate ignorance" is not a defense to the

21  crime; rather, it is a theory of culpability presented by the

22  prosecution. *See United States v. Shannon*, 137 F.3d 1112, 1117-

23  1118 (9th Cir.)*, cert. denied*, 524 U.S. 962 (1998), *overruled on*

24  *other grounds*, *United States v. Heredia*, 483 F.3d 913 (9th Cir.),

25  *cert. denied*, 128 S.Ct. 804 (2007):

26          Where the defendant's knowledge is at issue,

                                    23

1
2
3
4
5
6
7
8
9

> a 'deliberate ignorance' or '*Jewell*'
> instruction may be given where it is
> warranted by the evidence presented at trial
> ... If the parties present evidence of actual
> knowledge as well as deliberate ignorance, a
> *Jewell* instruction is appropriate ... Before
> a defendant can be deemed to be deliberately
> or willfully ignorant, facts must have put
> her on notice of the probability of the
> occurrence of criminal activity, that the
> defendant failed to investigate, thus
> deliberately choosing to not verify or
> discover the criminal activity ... However, a
> district court cannot give a *Jewell*
> instruction when the evidence points only to
> the defendant either having knowledge or not
> having knowledge.

Petitioner contends counsel was ineffective because counsel failed to advise Petitioner before pleading guilty "that he might be sentenced without Guidelines consideration and because of the movant's [sic] would have been sent to boot camp or obtain probation for the offense due to the fact that maximum allowed was four years."  Petitioner asserts that "[a] competent lawyer would have warned petitioner of the significant risk that the guideline would have to the sentence, the advised of lawyer have caused to reject the trial assertion, petitioner's [sic] was not sent to boot camp nor sentenced to probation due to his immigration status."

Petitioner's claim is belied by the terms of the written Plea Agreement and the Rule 11 colloquy.  Petitioner stated under oath that he had read the Plea Agreement and discussed it with counsel before signing it.  The Plea Agreement specifically details the process to be followed in determining Petitioner's sentence and specifically states that the crime to which

24

1   Petitioner was pleading guilty provided a maximum of four years

2   imprisonment, which was the sentence eventually imposed.  As

3   noted, the Court discussed each of these provisions in the Plea

4   Agreement with Petitioner during the Rule 11 colloquy and

5   Petitioner stated under oath that he understood them.  Defense

6   counsel's inaccurate prediction of the type of sentence

7   eventually imposed is not ineffective assistance of counsel under

8   these circumstances.  *See Doganiere v. United States*, 914 F.2d

9   165, 168 (9th Cir.1990), *cert. denied*, 499 U.S. 940 (1991);

10  *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir.1993), *cert.*

11  *denied*, 510 U.S. 1184 (1994).  Petitioner was fully warned that

12  his sentence could be different from the sentence counsel

13  recommended and that the judge was not bound by the terms of the

14  Plea Agreement.

15      Petitioner claims counsel was ineffective because

16  "Petitioner's [sic] was misinformed from counsel regarding the

17  voir dire selection-random, had the movant's [sic] knew that the

18  government would not select jurors or be allowed to use

19  peremptory strikes to exclude (1) African-American or (2)

20  Hispanic-American from jurors selection based on race alone, the

21  movant's would have asserted his trial, [sic] at no moment the

22  movant had knowledge that him [sic] would be permitted to have in

23  the jury selection hispanic or african americans [sic] race."

24      Petitioner's claim is categorically without merit.  The

25  written Plea Agreement specifically provided:

26          If the trial were a jury trial, the jury

25

1
2
3
4

would be composed of twelve lay persons
selected at random.  The defendant and his
attorney would have a say in who the jurors
would be by removing prospective jurors for
cause where actual bias or other
disqualification is shown, or without cause
by exercising peremptory challenges.

5   Petitioner stated under oath that he had read the Plea Agreement

6   and discussed it with counsel before signing it and that he

7   understood these rights and was willing to give them up during

8   the Rule 11 colloquy.  Petitioner's contention that he would have

9   gone to trial if he had known that counsel could object to the

10  prosecutor's use of peremptory challenges based on race under

11  *Batson v. Kentucky*, 476 U.S. 79 (1986), is simply not credible,

12  especially since a *Batson* issue is not based on any facts as jury

13  selection was never conducted.

14      Petitioner claims counsel was ineffective because he failed

15  to advise Petitioner that he could have subpoenaed Manuel

16  Quintero and Dalia Roman as witnesses at trial.  Petitioner

17  presents no evidence that either Manuel Quintero or Dalia Roman

18  told Petitioner at the time of his guilty plea that either would

19  have testified on his behalf.  Further, given their admissions

20  under oath during their respective changes of plea, made the same

21  day as Petitioner's change of plea, both would have been subject

22  to impeachment if they testified contrary to their sworn

23  representations to the Court and would face the possibility that

24  their Plea Agreements would be vacated by the prosecution.

25  Petitioner has not demonstrated prejudice under the *Strickland*

26  standard.

26

Petitioner's motion on these grounds is DENIED.

    4.   <u>Ineffective Assistance of Counsel at Sentencing</u>.

        a.   <u>Failure to Argue for Downward Departure Based on Sentencing Entrapment</u>.

Petitioner contends that he was denied the effective assistance of counsel at sentencing because of his failure to argue for a downward departure based on sentencing entrapment or sentencing manipulation.

Petitioner makes no showing that he was subjected to sentencing entrapment under the Ninth Circuit standards set forth above. Consequently, counsel was not ineffective in failing to argue for a downward departure based on sentencing entrapment.

Petitioner's motion on this ground is DENIED.

        b.   <u>Forseeability of Amount of Cocaine</u>.

Petitioner argues he was denied the effective assistance of counsel at sentencing because of counsel's failure to argue that Petitioner did not foresee the 2 kilograms of cocaine involved in the crime.

Petitioner admitted in the written Plea Agreement and under oath during the Rule 11 colloquy to the amount of cocaine involved in the crime to which he pleaded guilty. Because of Petitioner's admission, counsel could not argue at sentencing that Petitioner did not "foresee" the amount of cocaine involved. Further, because Petitioner was sentenced to well below the range to which he was originally exposed, he has not demonstrated prejudice within the meaning of *Strickland*.

1    Petitioner's motion on this ground is DENIED.

2              c.   **Failure to Call Co-Defendants and Petitioner's**
3    **Mother and Sister to Testify to Minimal Role**.

4    Petitioner contends he was denied the effective assistance
5    of counsel because of counsel's failure at sentencing to call co-
6    defendants Manuel Quintero and Dalia Roman and Petitioner's
7    mother and sister to testify to Petitioner's minimal role in the
8    offense.

9    Petitioner has not demonstrated ineffective assistance of
10   counsel on this ground because Petitioner cannot demonstrate
11   prejudice.  The PSR recommended a two-level reduction to
12   Petitioner's Base Offense Level for his minor role in the
13   offense, a reduction accepted by the Court when sentencing
14   Petitioner.

15   Petitioner's motion on this ground is DENIED.

16             d.   **Failure to Object to Term of Supervised**
17   **Release**.

18   Petitioner contends that counsel was ineffective at
19   sentencing for failing to argue that the imposition of a term of
20   supervised release following Petitioner's release from
21   imprisonment violates *Apprendi v. New Jersey*, 530 U.S. 466
22   (2000).

23   Petitioner's claim is without merit.  *See United States v.*
24   *Huerta-Pimental,* 445 F.3d 1220, 1222-122 (9th Cir.), *cert.*
25   *denied,* 549 U.S. 1014 (2006).

26   Petitioner's motion on this ground is DENIED.

5. **Ineffective Assistance of Counsel in Advising Petitioner to Plead Guilty**.

Petitioner contends that counsel was ineffective in advising Petitioner to plead guilty as a result of "(a) coercion, (b) 'unlawful out-of-court package deal based in [sic] his codefendant's Manuel Quintero cooperation/agreement, (c) out-of-court counsels and drug enforcement agents 'secretive' package deal agreement."

Petitioner's claims of coercion to plead guilty and a secretive package deal agreement are belied by the terms of the written Plea Agreement and Petitioner's admissions under oath during the Rule 11 colloquy. During the change of plea proceedings, the Court reviewed every provision of the Plea Agreement with Petitioner and asked Petitioner if he agreed. In every instance, Petitioner stated that he did. Petitioner was advised in the Plea Agreement and the Rule 11 colloquy that his sentence would be determined by the Court upon recommendation of the Probation Office, that the Court was not a party to the Plea Agreement, and that, if the sentence pronounced was different from what Petitioner expected, Petitioner would not be allowed to withdraw his guilty plea. Petitioner stated under oath that he understood and agreed. After reviewing with Petitioner every provision of the Plea Agreement pertaining to agreements by Petitioner and agreements by Respondent, the following occurred:

> Q. I have gone through what I understand in this writing to be the entire agreement as to what you are supposed to give and get in

29

1     return.  Do you have any different
     understanding?  Has anybody promised you
2     anything that I have not just gone over?

3     A. No.

4     Q.  Has anybody threatened you or put
     pressure on you to get you to change your
5     plea?

6     A.  No.

7  Petitioner's motion on this ground is DENIED.

8    6.  <u>Failure to Afford an Alford Plea or To Call for</u>

9 <u>Pretrial Hearing Before Entry of Guilty Plea</u>.

10  Petitioner contends counsel was ineffective "to minimum

11 afford a <u>Alford</u> Plea."  Petitioner asserts that "Counsel would

12 have called both codefendants' for the proposition of an Alford

13 plea, based on his client innocence purposes."

14  In *North Carolina v. Alford*, 400 U.S. 25 (1970), the Supreme

15 Court held "an express admission of guilt ... is not a

16 constitutional requisite to the imposition of criminal penalty.

17 An individual accused of crime may voluntarily, knowingly, and

18 understandingly consent to the imposition of a prison sentence

19 even if he is unwilling or unable to admit his participation in

20 the acts constituting the crime."  400 U.S. at 37.  The Supreme

21 Court noted:

22    Because of the importance of protecting the
    innocent and of insuring that guilty pleas
23    are the product of free and intelligent
    choice, various state and federal court
24    decisions properly caution that pleas coupled
    with claims of innocence should not be
25    accepted unless there is a factual basis for
    the plea ... and until the judge taking the
26    plea has inquired into and sought to resolve

30

> the conflict between the waiver of trial and
> the claim of innocence ... In the federal
> courts, Fed. Rule Crim. Proc. 11 expressly
> provides that a court 'shall not enter a
> judgment upon a plea of guilty unless it is
> satisfied that there is a factual basis for
> the plea.

*Id.* at 38 n.10.

Petitioner has not demonstrated prejudice as required by *Strickland* because he makes no showing that an *Alford* plea would have been acceptable to the United States and to the Court. *See Clark v. Lewis*, 1 F.3d 814, 823 (9th Cir.1993). The written Plea Agreement and the Rule 11 colloquy do not indicate in any way that Petitioner was pleading guilty even though he was maintaining his innocence of the crime to which he pleaded guilty. There was a factual basis for Petitioner's guilty plea.

Petitioner's motion on this ground is DENIED.

7. <u>Failure to Dispute *Terry* Investigative Stop</u>.

Petitioner contends counsel was ineffective by failing to move to suppress the results of a *Terry* stop.

Petitioner's claim is without merit. First, there was no *Terry* stop. The Fourth Amendment prohibition of unreasonable searches and seizures by the Government extends to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *Terry v. Ohio*, 392 U.S. 1, 9 (1968). The PSR states that Petitioner was *arrested* driving away from the scene of the drug transaction after he was seen by the confidential informant delivering the cocaine to Manuel Quintero's apartment. There is no question that the arresting

31

officers had probable cause to arrest Petitioner based on this information.

Petitioner's motion on this ground is DENIED.

8. <u>Entrapment by Estoppel</u>.

Petitioner contends that counsel was ineffective "in contending not with this affirmative defense of entrapment by estoppel for trial purposes or by guilty plea intentions." Petitioner asserts:

> At the time of the guilty plea there was an agreement between codefendant's [sic] Manuel Quintero and the respondent for cooperation, if Manuel Quintero was an [sic] 'government cooperating witness' at the time of the plea-guilty, Manuel Quintero would have not recommended the guilty plea entering to the petitioner's as part of his own affairs.

Petitioner's contention is without merit.  Entrapment by estoppel has no application or relevance to Petitioner's guilty plea.  "The entrapment by estoppel defense applies when an authorized government official tells the defendant that certain conduct is legal and the defendant believes the official ... '[T]he defendant must show [1] that he relied on the false information and [2] that his reliance was reasonable.' ... A defendant's reliance is reasonable if '"a person sincerely desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries."'" *United States v. Brebner*, 951 F.2d 1017, 1024 (9th Cir.1991).

Petitioner's motion on this ground is DENIED.

32

CONCLUSION

For the reasons stated:

1.    Petitioner Ruben Quintero's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 is DENIED;

2.    The Clerk of the Court is directed to ENTER JUDGMENT FOR RESPONDENT.

IT IS SO ORDERED.

Dated:    **December 22, 2008**              **/s/ Oliver W. Wanger**
                                          UNITED STATES DISTRICT JUDGE